## JOHN W. GARDNER v. COUNTY OF ITASCA AND ANOTHER.

157 N. W. (2d) 753.

March 29, 1968—No. 40,575.

*Spellacy, Spellacy & Lano* and *John A. Spellacy,* for appellant.

*Douglas M. Head,* Attorney General, and *David C. Weinberg,* Special Assistant Attorney General, for respondents.

OTIS, JUSTICE.

This is an action which challenges the constitutionality of Minn. St. 490.12, subd. 5, under which plaintiff's retirement compensation as a probate judge has been reduced by the amounts he is receiving as a member of the Public Employees Retirement Association. Plaintiff appeals from a summary judgment rendered in favor of defendants.

The parties have stipulated to the facts. Plaintiff took office as a probate judge of Itasca County in 1936. He apparently joined P. E. R. A. in 1937.[1] In 1947, Minn. St. 490.12, subd. 2, for the first time authorized probate judges to retire voluntarily after attaining the age of 70 years if they had 40 years of service. It provided for compensation based on one-half of that allotted to the office when the judge retired. L. 1947, c. 183, § 1. In 1949, the requirement as to service was reduced to 25 years. L. 1949, c. 473, § 1. In 1956, L. 1955, c. 815, § 5, permitted the county to supplement P. E. R. A. contributions which until then had been made only by the members themselves. In November 1956, plaintiff was elected to his last 6-year term as probate judge.

On May 23, 1961, the legislature adopted an amendment to § 490.12 which is the subject of this litigation and which reads thus (Ex. Sess. L. 1961, c. 25, § 1):

"Subd. 5. The probate judges retirement pension as provided herein shall be reduced by the full amount of any retirement pension other than is herein provided received by a probate judge from the state, any political subdivision, or public employees retirement association. In the event the probate judge withdraws from any retirement pension fund other than as herein provided prior to his retirement as a probate judge, the amount

---

[1] Minn. St. 1953, § 353.02, subd. 3 (repealed by L. 1957, c. 935, § 27, effective July 1, 1957).

contributed by the state or any political subdivision shall be computed and deducted from the probate judge's retirement over a five-year period commencing upon the date of such judge's retirement."

At the same time, § 490.12 was also amended to permit a probate judge who has reached the age of 70 to retire after 20 years of service, or a judge who had reached the age of 65 to retire after 24 years. Judge Gardner at that time was over 70 years of age and hence could retire in May 1961 rather than in January 1962, when he would otherwise have first been eligible under the prior law. Nevertheless, he chose not to do so until December 1962.

When Judge Gardner retired, his salary was $10,000 a year, so that he was eligible to receive $5,000 a year prior to the May 1961 amendment. In addition to the retirement compensation fixed by § 490.12, Judge Gardner received $260 a month from his membership in P. E. R. A. The net result of the May 1961 amendment was to reduce his retirement compensation under § 490.12 from $416.66 a month to $156.66. The statute was amended, it should be noted, about 8 months before he otherwise would have been entitled to enjoy both the benefits of P. E. R. A. in the sum of $260 and the benefits under § 490.12 in the sum of $416.66 a month.[2]

The state argues that there was quid pro quo for reducing Judge Gardner's retirement pay from $416.66 to $156.66 because the statute also conferred on him the right to retire in May 1961, rather than in January 1962. We do not agree. The fact that after 24 years of service the judge's eligibility for retirement was advanced some 7 months was a matter of such trifling significance that it had no bearing on the validity of the amendment. Nor are we impressed by the fact that by retaining P. E. R. A. membership, the judge preserved survivor benefits not available to those who did not belong to P. E. R. A. or had withdrawn from membership. The fact remains that after making substantial contributions

---

[2] In recognition of the injustice of deducting from the retirement benefits the entire amount of P. E. R. A. benefits received by a probate judge, including the judge's own contributions, the legislature in 1967 amended Minn. St. 490.12, subd. 5, to deduct only the amounts paid by the county toward P. E. R. A. benefits. Ex. Sess. L. 1967, c. 38, § 1.

to P. E. R. A. from his personal resources for some 24 years, Judge Gardner suddenly found himself in the same situation as those who chose not to contribute to P. E. R. A. He thereby suffered a severe and unexpected economic loss not experienced by colleagues who over the years did not make such provision for retirement.[3] Viewed in any light, the results are so unjust as to compel a holding that Judge Gardner has been denied the equal protection of the laws under U. S. Const. Amend. XIV, § 1, and Minn. Const. art. 1, § 2, and art. 4, § 33.

In dealing with the question of classification, we held in Fabio v. City of St. Paul, 267 Minn. 273, 277, 126 N. W. (2d) 259, 262:

"* * * The grounds for treating differently persons similarly situated may be slight, provided the discrimination is based on a reasonable distinction which is supported by the facts."

However, it is also the rule that distinctions which separate those included and those excluded from the application of a particular law must be genuine and substantial and must provide a reasonable and not a capricious or arbitrary basis for the imposition of special legislative regulations. City of St. Paul v. Dalsin, 245 Minn. 325, 331, 71 N. W. (2d) 855, 859.

Although the purpose of the 1961 amendment was to prevent the payment of more than one tax-supported pension to a single person, until the law was again amended by Ex. Sess. L. 1967, c. 38, the deductions from Judge Gardner's retirement pay were not limited to the total amount paid by the county on his behalf to P. E. R. A. As a result, under the 1961 amendment he would ultimately have been deprived not only of the amount contributed by the county but of an amount which represented his own contributions as well. Consequently, we find that as to Judge Gardner and any other judge similarly situated the provisions of Ex. Sess. L. 1961, c. 25, § 1, subd. 5, are invalid.

Reversed.

---

[3] "* * * Whether it be in the field of sports or in the halls of the legislature it is not consonant with American traditions of fairness and justice to change the ground rules in the middle of the game." Hickey v. Pension Board of City of Pittsburgh, 378 Pa. 300, 310, 106 A. (2d) 233, 238, 52 A. L. R. (2d) 430.