## MARLENE M. SCHWARTZ v. WARREN TALMO, d.b.a. WARREN'S MASONRY, AND ANOTHER.

205 N. W. 2d 318.

February 23, 1973—No. 43146.

*David A. Joerg,* for relator.

*Robb, Van Eps & Gilmore* and *Michael D. Aafedt,* for respondents.

TODD, JUSTICE.

The widow of decedent seeks review of an order of the Workmen's Compensation Commission denying her benefits because her husband committed suicide. The decedent was injured prior

to the adoption of a statute making suicide noncompensable, but committed suicide thereafter. We affirm.

On September 12, 1966, the decedent, Neil L. Schwartz, sustained a personal injury to his back and spine arising out of and during the course of his employment with Warren Talmo, d.b.a. Warren's Masonry. Compensation was paid by the employer through January 30, 1967, at which time it was discontinued. On July 27, 1967, the employee filed a claim petition for additional compensation. Prior to the hearing of this claim, an amendment to Minn. St. 176.021, subd. 1,[1] became effective on September 1, 1967, adding to the statute the following words: "[S]uicides are not compensable."

In January 1968 a hearing was held on the employee's claim petition, and he was awarded additional continuing temporary total disability benefits. These benefits were paid by the employer's insurance company to the date of decedent's death on May 3, 1968. The decedent was extremely depressed following his injury and his inability to regain full health. He became deranged and confused and was confined for a while at Rochester State Hospital for treatment. His condition appeared to improve and he was released from the hospital. Upon returning home, he again became depressed and remained in such a state to the time of his suicide. The compensation judge found that the suicide arose out of and in the course of his employment in that it was a direct and proximate result of his personal injury on September 12, 1966. He determined that the emotional reaction evoked by that injury, the incapacity caused by it, and the traumatic neurosis and psychosis flowing from it all contributed to the psychotic condition of the decedent at the time he took his own life. The evidence in the record sustains such a finding. Absent the passage of the statute in question, the relator-widow and dependent children would be entitled to death benefits under our workmen's compensation statute.

The relator raises two issues upon this appeal: (1) Under the

---

[1] Ex. Sess. L. 1967, c. 40, § 3.

circumstances and facts of this case, does the amendment to § 176.021, subd. 1, have the effect of cutting off dependents' rights to death benefits? (2) Under the circumstances and facts of this case, does the amendment to the statute deprive relator of her constitutional rights under Minn. Const. art. 1, § 2, and art. 4, §§ 33 and 34, and under the Fourteenth Amendment to the United States Constitution?

■ In reviewing decisions relating to the Workmen's Compensation Act, this court is guided by certain general principles. Historically, the Workmen's Compensation Act gave employees rights of recovery against the employer and eliminated certain common-law defenses, such as contributory negligence, assumption of risk, and the fellow-servant doctrine. In balancing this off, the employee was denied the right to file a common-law action against his employer for those injuries covered in the Workmen's Compensation Act. The Workmen's Compensation Act should be liberally construed so as to give effect to its full purpose. As we stated in Kolbeck v. Myhra, 255 Minn. 341, 344, 96 N. W. 2d 633, 635 (1959):

"* * * Since workmen's compensation statutes are highly remedial and humanitarian in purpose, they must be given a broad, liberal construction in the interests of the workmen."

However, even though the court will liberally construe the language of the Workmen's Compensation Act, it cannot and will not legislate or depart from the clear and accepted meaning of words used in the statute.

■ The rights of the decedent were fixed at the time of the accident. Schmahl v. School District No. 12, 200 Minn. 294, 274 N. W. 168 (1937). Rights of dependents are derivative from the employee's claim and proceedings by dependents after the death of the employee are merely a continuation of the proceedings commenced prior to death. Nyberg v. Little Falls Black Granite Co. 202 Minn. 86, 277 N. W. 536 (1938); Susnik v. Oliver Iron Min. Co. 205 Minn. 325, 286 N. W. 249 (1939); Johnson v. Pillsbury Flour Mills Co. 203 Minn. 347, 281 N. W. 290 (1938).

Minnesota has clearly determined that the rights of the dependents are separate, inchoate rights which become effective at the date of death and are governed by any intervening statutes passed and becoming effective between the date of injury and the date of death. In State ex rel. Carlson v. District Court, 131 Minn. 96, 97, 154 N. W. 661 (1915), we said:

"* * * The claim of plaintiff for compensation does not arise from the injury to her husband, but is a new and distinct right of action created by his death."

In Lewis v. Connolly Contracting Co. 196 Minn. 108, 115, 264 N. W. 581, 584 (1936), this court held that the compensation to dependents for the death of a workman is a "different, distinct, and independent statutory right," and the cause of action given to the dependent arises at the time of death.

In Warner v. Zaiser, 184 Minn. 598, 239 N. W. 761 (1931), we held that the benefits and liabilities arising because of the employee's death are fixed at the time of death, and said (184 Minn. 601, 239 N. W. 762):

"* * * The legislature may change the scale of weekly or other benefits prior to the occurrence of the accident; it may change the benefits to be received by the widow of an employe prior to the death."

The position of this court was summarized in Carroll v. State, 242 Minn. 70, 78, 64 N. W. 2d 166, 172 (1954), where we said:

"We have held on a number of occasions that the rights of dependents to recover death benefits are separate and distinct from the rights of an employee to recover compensation or medical or hospital benefits during his lifetime. * * *

* * * * *

"We also hold that the law in effect at the time of the employee's death governs the rights of the dependents. State ex rel. Carlson v. District Court, [131 Minn. 96, 154 N. W. 661 (1915)]; State ex rel. Globe Ind. Co. v. District Court, 132 Minn. 249, 156 N. W. 120 [1916]; Soderstrom v. Curry & Whyte, Inc. 143 Minn.

154, 173 N. W. 649 [1919]; Warner v. Zaiser, 184 Minn. 598, 239 N. W. 761 [1931]; Ogren v. City of Duluth, 219 Minn. 555, 18 N. W. (2d) 535 [1945]; Pittman v. Pillsbury Flour Mills, Inc. 234 Minn. 517, 48 N. W. (2d) 735 [1951].

"We realize that the authorities are not in accord on this question. While decisions from foreign jurisdictions are often of little value unless the statutory provisions upon which the decision is based are the same or similar to ours, it does seem that we follow what might well be designated the minority view. For an annotation on the subject, see 82 A. L. R. 1244."

The relator asserts that the language of the statute regarding suicide is silent as to the proceedings to which it applies, and argues that since the accident in question occurred prior to the adoption of the statute, it is not covered thereby. She further argues that since the compensation hearing had been commenced and compensation was being paid, her claim was merely a continuation of an existing hearing; that there is only one proceeding for one casualty under the workmen's compensation law. She further argues that we should distinguish State ex rel. Carlson v. District Court, *supra,* and other similar cases on the basis that they deal with the payment of additional compensation and statutes governing the quantum of payments and not with the merits of the right to recover.

To adopt the argument of relator in whole or in part would require a reversal of our prior holdings, and we are not prepared to so do. The language of the statute is clear and explicit and makes suicides which occur after September 1, 1967, noncompensable. This is what occurred under the facts of this case, and we are bound by our prior holdings to apply the law in effect at the date of death.

■ Relator also attacks the constitutionality of the statute as applied to decedent's dependents. She contends that it is violative of due process since it destroys existing rights. However, this argument is based on an assumption that there was an existing right under the laws of the State of Minnesota, and as stated

above, we have consistently held that all of the rights of the dependents are fixed as of the date of death. Therefore, there can be no destruction of rights since none existed at the time of the passage of the statute.

■■■ Relator also argues that the statute is violative of equal protection. This poses a narrower and more difficult question. In considering any legislation which is attacked as a denial of equal protection, we apply certain guiding principles which have evolved from many of our cases. The rule is that legislative classification will be held to be constitutionally valid if—

(1) the classification uniformly, without discrimination, applies to and embraces all who are similarly situated with respect to conditions or wants justifying appropriate legislation;

(2) the distinctions which separate those who are included within the classifications from those who are excluded are not manifestly arbitrary or fanciful, but are genuine and substantial so as to provide a natural and reasonable basis in the necessity or circumstances of the members of the classification to justify different legislation adapted to their peculiar conditions and needs; and

(3) the classification is germane or relevant to the purpose of the law; that is, there must be an evident connection between the distinctive needs peculiar to the class and the remedy or regulations therefor which the law purports to provide.[2]

Another fundamental principle frequently stated is that one alone may constitute a class as well as a thousand, but the fewer there are in a class, the more closely the courts will scrutinize the act to see if its classification constitutes an evasion of the

---

[2] Loew v. Hagerle Brothers, 226 Minn. 485, 33 N. W. 2d 598 (1948); Hamlin v. Ladd, 217 Minn. 249, 14 N. W. 2d 396 (1944); Eldred v. Division of Employment & Security, 209 Minn. 58, 295 N. W. 412 (1940); Arens v. Village of Rogers, 240 Minn. 386, 61 N. W. 2d 508 (1953), appeal dismissed, 347 U. S. 949, 74 S. Ct. 680, 98 L. ed. 1096 (1954); Kellerman v. City of St. Paul, 211 Minn. 351, 1 N. W. 2d 378 (1941); Gardner v. County of Itasca, 280 Minn. 51, 157 N. W. 2d 753 (1968).

constitution. Hamlin v. Ladd, 217 Minn. 249, 14 N. W. 2d 396 (1944); Loew v. Hagerle Brothers, 226 Minn. 485, 33 N. W. 2d 598 (1948).

Class legislation discriminating against some and favoring others is not unconstitutional where it affects all persons similarly situated and the classification is not arbitrary. Grounds for the discrimination between the persons similarly situated may be slight, the question being primarily for the legislature, and unless it is manifestly arbitrary and unreasonable, it will be sustained. State v. International Harvester Co. 241 Minn. 367, 63 N. W. 2d 547, appeal dismissed, 348 U. S. 853, 75 S. Ct. 78, 99 L. ed. 672 (1954).

The general rule to be followed by the court is set forth in 3B Dunnell, Dig. (3 ed.) § 1669:

"* * * When the legislature has determined that a sufficient distinction exists between two classes of persons to justify applying rules to one class which do not apply to the other, such determination is binding upon the courts, unless they can point out that the distinction is purely fanciful and arbitrary, and that no substantial or logical basis exists therefor."

Further, 17B Dunnell, Dig. (3 ed.) § 8931, sets forth additional rules to be considered by the court:

"A law is not to be declared unconstitutional by the courts unless palpably so. The power of the courts in this regard is to be exercised only when absolutely necessary, and then with extreme caution. Unless a law is unconstitutional beyond a reasonable doubt it must be sustained.

"Every presumption is invoked in favor of the constitutionality of an act of the legislature, and the courts should not declare it unconstitutional except when satisfied, after careful consideration, that it conflicts with some provision of the state or federal constitution.

\* \* \* \* \*

"A law is not to be declared unconstitutional merely because the court deems it bad policy or bad economics."

■ While recent decisions suggest that the United States Supreme Court is scrutinizing challenged statutes more closely than formerly in determining whether a statutory classification bears some rational relationship to a legitimate state purpose,[3] it was stated in Weber v. Aetna Cas. & Surety Co. 406 U. S. 164, 174, 92 S. Ct. 1400, 1406, 31 L. ed. 2d 768, 778 (1972):

"Finally, we are mindful that States have frequently drawn arbitrary lines in workmen's compensation and wrongful-death statutes to facilitate potentially difficult problems of proof. Nothing in our decision would impose on state court systems a greater burden in this regard."

Applying these principles to the facts of this case, we cannot hold that the statute in question is unconstitutional and a denial of equal protection. While this court may regard this legislation as harsh and regressive because of the fact that Minnesota is the only state to single out suicide as noncompensable, we are compelled by our former decisions to regard the rights of recovery under the Workmen's Compensation Act as purely creatures of statute, properly subject to legislative action only.

We affirm the decision of the Workmen's Compensation Commission. Neither party is allowed costs on this appeal.

Affirmed.

MacLAUGHLIN, JUSTICE (dissenting).

I believe that the 1967 amendment to Minn. St. 176.021, subd. 1, stating that "suicides are not compensable," denies plaintiff the equal protection of the laws guaranteed by the Fourteenth Amendment of the United States Constitution and should be declared by this court to be unconstitutional.

The perplexing problem of work-related suicides has led to

---

[3] See, James v. Strange, 407 U. S. 128, 92 S. Ct. 2027, 32 L. ed. 2d 600 (1972); Weber v. Aetna Cas. & Surety Co. 406 U. S. 164, 92 S. Ct. 1400, 31 L. ed. 2d 768 (1972); Eisenstadt v. Baird, 405 U. S. 438, 92 S. Ct. 1029, 31 L. ed. 2d 349 (1972); Reed v. Reed, 404 U. S. 71, 92 S. Ct. 251, 30 L. ed. 2d 225 (1971).

the adoption of varying rules for recovery in other jurisdictions. See, e.g., Scanlon, *Suicide under Workmen's Compensation Laws,* 12 Clev.-Mar. L. Rev. 26; Note, *The Minnesota Workmen's Compensation Act: Recent Interpretations,* 46 Minn. L. Rev. 199, 204; 1A Larson, Workmen's Compensation Law, § 36 ff.; Annotation, *Suicide as Compensable under Workmen's Compensation Act,* 15 A. L. R. 3d 616. These rules demonstrate differing judicial responses to the problems of proof in demonstrating the causal link between a work-related injury and death by suicide.[1] As cited in the majority opinion, the United States Supreme Court in Weber v. Aetna Cas. & Surety Co. 406 U. S. 164, 174, 92 S. Ct. 1400, 1406, 31 L. ed. 2d 768, 778 (1972), has stated that—

"* * * the States have frequently drawn arbitrary lines in workmen's compensation and wrongful-death statutes to facilitate potentially difficult problems of proof. Nothing in our decision would impose on state court systems a greater burden in this regard."

However, in its 1967 amendment to § 176.021, subd. 1, the legislature went far beyond attempting "to facilitate potentially difficult problems of proof." Rather, the legislature apparently sought to resolve the problems of proof by excluding all suicides from the coverage of the Workmen's Compensation Act. Neither

---

[1] See, e.g., Mercer v. Department of Labor & Industries, 74 Wash. 2d 96, 442 P. 2d 1000 (1968) (death compensable only if decedent acted under an uncontrollable impulse or while in delirium); Matter of Franzoni v. Loew's Theatre & Realty Corp. 22 App. Div. 2d 741, 253 N. Y. S. 2d 505 (1964); Id. 25 App. Div. 2d 453, 265 N. Y. S. 2d 751, appeal denied, 17 N. Y. 2d 666, 269 N. Y. S. 2d 444, 216 N. E. 2d 605 (death compensable when caused by brain derangement or psychosis rather than "mere" depression); Petty v. Associated Transport, Inc. 276 N. C. 417, 173 S. E. 2d 321 (1970) (death compensable if "chain of causation" such that the deprivation of normal judgment which leads to suicide is result of compensable accident).

party has called to our attention, nor does our research disclose, any other state which has a similar provision in its workmen's compensation act.

I believe that the absolute prohibition against compensation for suicides is unconstitutional under the standards enunciated by the majority. I also believe the renewed vigor given by the United States Supreme Court to "traditional" equal-protection review compels a stricter review of nonsuspect classifications and nonfundamental interests than has been granted in the past. In the 1971 term, there were at least four cases[2] in which the United States Supreme Court struck down legislation on equal-protection grounds while explicitly applying the "traditional" or "restrained" level of review which had previously been considered "virtual judicial abdication."[3] Professor Gerald Gunther commented as follows about the trend indicated by these recent decisions of the United States Supreme Court (Gunther, *The Supreme Court, 1971 Term, Foreword: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection,* 86 Harv. L. Rev. 1, 20):

"* * * *Judicial deference to a broad range of conceivable legislative purposes and to imaginable facts that might justify classifications is strikingly diminished.* Judicial tolerance of

---

[2] James v. Strange, 407 U. S. 128, 92 S. Ct. 2027, 32 L. ed. 2d 600 (1972); Weber v. Aetna Cas. & Surety Co. 406 U. S. 164, 92 S. Ct. 1400, 31 L. ed. 2d 768 (1972); Eisenstadt v. Baird, 405 U. S. 438, 92 S. Ct. 1029, 31 L. ed. 2d 349 (1972); Reed v. Reed, 404 U. S. 71, 92 S. Ct. 251, 30 L. ed. 2d 225 (1971). Professor Gerald Gunther concluded that a total of seven cases used the traditional minimal-scrutiny equal protection standard to strike down legislation, citing, in addition to the above cases, Jackson v. Indiana, 406 U. S. 715, 92 S. Ct. 1845, 32 L. ed. 2d 435 (1972); Stanley v. Illinois, 405 U. S. 645, 92 S. Ct. 1208, 31 L. ed. 2d 551 (1972); Humphrey v. Cady, 405 U. S. 504, 92 S. Ct. 1048, 31 L. ed. 2d 394 (1972). Gunther, *The Supreme Court, 1971 Term, Foreword: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection,* 86 Harv. L. Rev. 1, 18, and note 88.

[3] Gunther, footnote 2, *supra,* p. 19.

overinclusive and underinclusive classifications is notably reduced. Legislative leeway for unexplained pragmatic experimentations is substantially narrowed." (Italics supplied.)

The case of Reed v. Reed, 404 U. S. 71, 92 S. Ct. 251, 30 L. ed. 2d 225 (1971), is a good example of the renewed power given traditional equal-protection review. That case dealt with an Idaho probate statute which provided that where several persons are equally qualified to administer an estate, the appointing court must prefer males over females. The court did not treat classifications on the basis of sex to be "suspect," but stated the relevant test under restrained review (404 U. S. 75, 92 S. Ct. 253, 30 L. ed. 2d 229) :

"* * * [T]his Court has consistently recognized that the Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways. [Citations omitted.] The Equal Protection Clause of that amendment does, however, deny to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes *on the basis of criteria wholly unrelated to the objective of that statute.* A classification 'must be reasonable, not arbitrary, and *must rest upon some ground of difference having a fair and substantial relation to the object of the legislation,* so that all persons similarly circumstanced shall be treated alike.' " (Italics supplied.)

In upholding the statute below, the Idaho Supreme Court had pointed out its value as eliminating one area of controversy which would otherwise require a hearing as to which of two or more petitioners was better qualified to administer the estate. Reed v. Reed, 93 Idaho 511, 465 P. 2d 635 (1970). It also found the classification was not arbitrary because the legislature "evidently concluded that in general men are better qualified to act as an administrator than are women." 93 Idaho 514, 465 P. 2d 638. Although the court recognized that there are exceptions to this generalization, it did not find the classification "so com-

pletely without a basis in fact as to be irrational and arbitrary." Id.

The Supreme Court summarily swept away these purported justifications (404 U. S. 76, 92 S. Ct. 254, 30 L. ed. 2d 230):

"Clearly the objective of reducing the workload on probate courts by eliminating one class of contests is not without some legitimacy. The crucial question, however, is whether § 15-314 advances that objective in a manner consistent with the command of the Equal Protection Clause. We hold that it does not. To give a mandatory preference to members of either sex over members of the other, merely to accomplish the elimination of hearings on the merits, is to make the very kind of arbitrary legislative choice forbidden by the Equal Protection Clause of the Fourteenth Amendment; and whatever may be said as to the positive values of avoiding intrafamily controversy, the choice in this context may not lawfully be mandated solely on the basis of sex."

This analysis is applicable to the statute before us. The legislature apparently felt that the problems of proof and the need for a hearing in workmen's compensation cases involving suicide placed an unnecessary burden on the employer. Yet, the petitioner, a widow whose husband's suicide was explicitly found to have arisen out of and in the course of employment, is in precisely the same position as others whose spouses have died from work-related injuries. I do not believe it is a reasonable classification, or that it furthers a legitimate state interest, to deny benefits to the widow and children of a workman whose death is caused by suicide arising as a direct result of a work-related injury while allowing those benefits to the widow and children of a workman whose death is caused by, for example, an infectious disease arising as a direct result of a work-related injury.[4]

---

[4] The employer and insurer have not sought review of the determination that the suicide arose out of and in the course of the employment and was a direct and proximate result of the employee's personal injury of September 12, 1966.

If, following Reed, we refuse to accept classifications which are based solely on legislative generalizations intended to ease administrative burdens, we must find another justification for the statute in order to uphold its constitutionality. I can find no such justification.

The legislature could properly have sought to directly confront the difficulty of proof which evidently was the motivation behind the 1967 amendment. However, in my judgment, it could not constitutionally bar all recovery simply to avoid those problems.

As stated by Mr. Justice Jackson in a concurring opinion in Railway Express Agency, Inc. v. New York, 336 U. S. 106, 112, 69 S. Ct. 463, 466, 93 L. ed. 533, 540 (1949):

"Invocation of the equal protection clause * * * does not disable any governmental body from dealing with the subject at hand. It merely means that the prohibition or regulation must have a broader impact. I regard it as a salutary doctrine that cities, states and the Federal Government must exercise their power so as not to discriminate between their inhabitants except upon some reasonable differentiation fairly related to the object of regulation."

I would reverse the commission and grant recovery of benefits where, as here, the suicide arose out of and in the course of the employment and was a direct and proximate result of the employee's personal injury.

ROGOSHESKE, JUSTICE (dissenting).

I join in the dissent of Mr. Justice MacLaughlin.

KELLY, JUSTICE (dissenting).

I join in the dissent of Mr. Justice MacLaughlin for the reasons stated therein and herein. Assuming arguendo that this state provided in a wrongful-death statute that all dependents might recover for the death of a husband or father, we would not find it difficult to conclude that a proviso in such a statute that would prohibit an employee's dependents from recovering from an employer would be an unreasonable classification with-

out any legitimate state interest. However, if the state provided a reasonable substitute to an action for wrongful death by the employee's dependents, the exception in the wrongful-death statute might then serve a legitimate state interest if considered together with the reasonable substitute. A statute permitting recovery of an assured amount for dependents of an employee from the employer for his work-related death under the Workmen's Compensation Act could be a reasonable substitute as compared to the uncertainty of a wrongful-death action.

Under the workmen's compensation law of this state, an employer may not be held liable for the death of an employee arising out of his employment to the employee's dependents except under the Workmen's Compensation Act. The majority opinion concludes that an employee's dependents cannot recover under that act for death by suicide though arising out of his employment. Thus, there is no reasonable substitute for the statutory right to an action for wrongful death by an employee's dependents under the circumstances of this case—a fact which, in my opinion results in an unreasonable classification.[1]

This unreasonable classification smacks of unconstitutionality not only on the ground that it violates the constitutional provisions of equal protection of the law, but also on the ground that it violates the due process clauses of the State and Federal Constitutions. The mischief is caused by the workmen's compensation statute which prohibits any action against the employer except under that act and the provision declaring that suicide is not compensable. Their combined effect is that under the Workmen's Compensation Act there is no reasonable substitute for the statutory right to an action for wrongful death. The remedy could be that of declaring unconstitutional either the provision prohibiting actions by employees' dependents against employers

---

[1] A recovery may be had under wrongful-death statutes for death by suicide under some circumstances. See, Annotation, 11 A. L. R. 2d 751, § 4. Compare, Sworski v. Coleman, 208 Minn. 43, 50, 293 N. W. 297, 300 (1940).

except as permitted under the Workmen's Compensation Act, or the provision in that act prohibiting an employee's dependents from any recovery for death by suicide.

My choice of remedies would be that of voiding the amendment to Minn. St. 176.021, subd. 1, which added that "suicides are not compensable," not only because the act was constitutional before that amendment was added, but because of the problems that would otherwise follow. Here the employee sought and obtained compensation under the act for a period up to the date of his death, which occurred after the amendment was adopted. Fairness would dictate that a recovery under the Workmen's Compensation Act should be exclusive and thus avoid the possible doubling effect of a partial recovery under that act and an additional recovery under the death-by-wrongful-act statute. I am aware that there is no evidence before us that a recovery might be had under the death-by-wrongful-act statute but, in my opinion, depriving a class of persons, namely employees' dependents, of the right to sue should be a sufficient loss to bring into play the constitutional forces of due process and equal protection of the laws. Due process because dependents of employees are deprived of their right to sue for the wrongful death of the employee or in the alternative to the reasonable substitute provided by the Workmen's Compensation Act but for the amendment.[2] An employee's dependents are denied the equal protection of the laws as they may not sue the employer for wrongful death as others might do and are deprived by the amendment from any reasonable substitute for such right.

I perceive no rational purpose in distinguishing between rights under the common law and statutory rights under the facts of this case, nor any particular legislative purpose to be served. It might be argued that the difficulties in establishing the causal connection between the suicide and the work-connected injuries

---

[2] For a discussion of due process in a different setting, see, Haney v. International Harvester Co. 294 Minn. 375, 201 N. W. 2d 140 (1972).

is a sufficient legislative purpose. Such an argument has little or no merit in the light of the same difficulties present in a number of other cases under the Workmen's Compensation Act.