## DEPENDENTS OF Otis D. ONDLER, Relators,

v.

## PEACE OFFICERS BENEFIT FUND, Respondent.

### No. 49704.

Supreme Court of Minnesota.

Jan. 4, 1980.

Schacht & Kerr, Rochester, for relators.

Warren Spannaus, Atty. Gen., and Winston Ehlmann, Asst. Atty. Gen., St. Paul, for respondent.

WAHL, Justice.

Relators, dependents of Otis D. Ondler, challenge the constitutionality of Minn.Stat. ch. 352E (1978) on the ground that the legislature, by excluding heart attack victims from the group of peace officers entitled to the statutory award, created an arbitrary and unreasonable classification which denies them the equal protection of the law. The Workers' Compensation Court of Appeals, lacking jurisdiction to determine the constitutional issue, denied benefits solely on the basis of the statutory exclusion.[1] We reverse.

Otis D. Ondler, a fireman employed by the Rochester Fire Department on January 23, 1976, died of a heart attack while fighting a fire. The city recognized its liability to pay workers' compensation dependency benefits to Ondler's widow. The uncontradicted opinion of Dr. Paul Beleu, Olmsted County Deputy Coroner, was that there was a causal relationship between the physical and psychic stress Ondler underwent in the firefighting and his death. Relators, Ondler's widow and daughter, also sought payment of a $50,000 award from the state, pursuant to Minn.Stat. ch. 352E (1978).[2]

1. Adjudication of the constitutionality of legislative enactments has generally been thought beyond the jurisdiction of administrative agencies. *Johnson v. Robison*, 415 U.S. 361, 368, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974). This court, however, has the power and affirmative duty to consider constitutional challenges to legislative enactments which allegedly deny the equal protection of the law, guaranteed by the Fifth and Fourteenth Amendments of the U.S. Constitution and by Article I, Section 2, of the Minnesota Constitution.

2. Minn.Stat. § 352E.04 provides:

The Rochester Fire Department chief sent the governor notice of Ondler's death on February 4, 1976. The governor forwarded this information to the then Workers' Compensation Board. On February 19, 1976, the Board issued an order denying the claim, pursuant to § 352E.04(e).[3] The Workers' Compensation Court of Appeals thereafter accorded relators an evidentiary hearing. At the hearing, Dr. Beleu testified that Ondler had a "perfectionist" type of personality and that his personality, the psychic stress he had undergone when the brakes on his firetruck had failed to work on the way to the fire, and his strenuous physical exertion in dragging a firehose had been circumstances which together had precipitated a cardiac arrhythmia which had been the immediate cause of his death. Dr. Beleu also testified that the same factors could trigger acute respiratory insufficiency, such as an acute asthma attack, and several types of strokes, including aneurysms, in persons susceptible to such occurrences. He agreed that the ventricular fibrillation which killed Ondler was considered medically to be a heart attack.

Following the hearing, the court of appeals made findings that Ondler had sustained a personal injury arising out of and in the course of his employment as a fireman, that death by heart attack was specifically excluded from coverage pursuant to § 352E.04(e), and that the court did not have jurisdiction to determine the constitutionality of that provision. Accordingly, it held relators not entitled to benefits from the peace officers benefit fund. They sought review.

The sole question on appeal is whether a rational basis exists for excluding peace officers who are killed by heart attacks while in the line of duty from the additional Workers' Compensation benefits of the peace officers benefit fund award of $50,000 under Minn.Stat. ch. 352E (1978) when the $50,000 award is made to peace officers who are killed in any other way in the line of duty.[4]

The chapter at issue here, first enacted in 1973, provides a payment by the state of $50,000 to the spouse and dependents of a peace officer killed in the line of duty. "Peace officer" includes a firefighter employed on a full-time basis by a fire department, who is engaged in the hazards of firefighting. Minn.Stat. § 352E.01, subd. 2(g) (1978). Section 352E.02 of the statute creates an account in the state treasury, the peace officers benefit fund. Section 352E.03 provides that eligibility to receive benefits provided by the chapter shall be determined by the Workers' Compensation Court of Appeals "in the manner provided by [Minn.Stat. 1971] chapter 176" and for review by this court of that determination. Section 352E.04 provides benefits to all peace officers killed in the line of duty, except those who die as a result of a heart attack.

Relators' challenge to the statute is two-pronged. First, they argue that "killed in the line of duty" was not used to require that the death be the result of the application of external violence or accident, but was used more broadly to include a death occurring while the peace officer was in the line of duty. Relators contend that in common understanding people are "killed" by strokes, acute respiratory disorders, aneurysms, and heart attacks. Other courts have interpreted similar language with this liberality. *Vernon v. Firemen's Pension*

---

Upon certification to the governor by the administrator of any state or governmental subdivision employing peace officers that a peace officer employed by that state or governmental subdivision within this state has been killed in the line of duty, leaving a spouse or one or more eligible dependents, the commissioner of finance shall, subject to the approval of the workers' compensation court of appeals, pay $50,000 [to the peace officer's dependents] * * *.

3. Section 352E.04(e) provides:

 * * * *For the purpose of sections 352E.01 to 352E.05, killed in the line of duty shall not include any peace officer who dies as a result of a heart attack.* (Emphasis added.)

4. The peace officers benefit fund is administered by the Workers' Compensation Court of Appeals. Minn.Stat. ch. 352E.03 (1978).

*Fund,* 160 Pa.Super. 617, 52 A.2d 199 (1947); *Casserly v. City of Oakland,* 215 Cal. 600, 12 P.2d 425 (1932); Annot., 27 A.L.R.2d 1004, 1013 (1953). The addition of the exception in the last sentence of § 352E.04(e) suggests that the legislature did intend the word "killed" to be broadly interpreted. The state in fact concedes that Ondler was "killed in the line of duty."

 Second, relators argue that, after granting an additional Workers' Compensation benefit of $50,000 to peace officers killed in the line of duty, the legislature denied the additional award to peace officers who are killed by heart attacks, without grounds for the discrimination. The U.S. Supreme Court has frequently expressed the principles which govern equal protection analysis of legislative enactments. The Constitution does not deny the states the power to treat different classes of persons in different ways. However, the equal protection clause of the Fourteenth Amendment does deny to states "the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute." *Eisenstadt v. Baird,* 405 U.S. 438, 447, 92 S.Ct. 1029, 1035, 31 L.Ed.2d 349 (1972). That is, a classification which treats one class of persons differently from another must, under even minimal judicial scrutiny, be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that similarly situated persons will be treated alike. *Reed v. Reed,* 404 U.S. 71, 76, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); *cf. Johnson v. Robison,* 415 U.S. 361, 374–75, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974); *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 93, 94, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978).

In *Schwartz v. Talmo,* 295 Minn. 356, 205 N.W.2d 318 (1973), cited by both parties, we identified three criteria which a legislative classification must meet if it is to withstand an equal protection challenge:

"* * * The rule is that legislative classification will be held to be constitutionally valid if—

(1) the classification uniformly, without discrimination applies to and embraces all who are similarly situated with respect to conditions or wants justifying appropriate legislation;

(2) the distinctions which separate those who are included within the classifications from those who are excluded are not manifestly arbitrary or fanciful, but are genuine and substantial so as to provide a natural and reasonable basis in the necessity or circumstances of the members of the classification to justify different legislation adapted to their peculiar conditions and needs; and

(3) the classification is germane or relevant to the purpose of the law; that is, there must be an evident connection between the distinctive needs peculiar to the class and the remedy or regulations therefor which the law purports to provide."

295 Minn. at 362, 205 N.W.2d at 322.

 We are not persuaded that the classification under attack here satisfies these criteria. Medical testimony in this case indicated that the same stresses which triggered Ondler's heart attack could have caused respiratory failure, such as an acute asthma attack, and several types of strokes, including aneurysms, in persons susceptible to such occurrences. Had Ondler's death resulted from any of these other causes, however, he would have been entitled to the benefits. We fail to see any reason to distinguish between heart attack victims and victims of the same stresses who die in other ways. Furthermore, such a distinction subverts the purpose of the statute, which was to provide additional benefits to dependents of peace officers because of the unusual risks they face in their work.

The state argues that this case is governed by the holding in *Schwartz v. Talmo, supra,* where a clause making suicide victims ineligible for workers' compensation benefits was upheld against an equal protection challenge. In *Schwartz,* however, this court was called upon to review the legislature's decision to exclude suicide vic-

tims from workers' compensation death benefits of any kind.[5] Here, the legislature has already permitted recovery of death benefits by Otis Ondler's dependents. The only question before us is whether the classification excluding heart attack victims from the workers who will receive the additional death benefit has a rational basis. We hold that it does not. The classification, lacking a rational basis, denies equal protection under the Fourteenth Amendment of the U.S. Constitution and Article I, Section 2 of the Minnesota Constitution.

Reversed.

**5.** Three months after our decision in *Schwartz*, the legislature amended Minn.Stat. § 176.021, subd. 1, striking out the language excluding suicide victims from compensation, which *Schwartz* enforced. Minn. Laws 1973, ch. 623.