Teresa Ann McColley
**SCHMITZ, Appellant,**

v.

**Mark Edward STRANSKY, a/k/a Mark Edward Rand, Respondent.**

**No. C2–89–1789.**

Court of Appeals of Minnesota.

April 24, 1990.
Review Denied June 25, 1990.

Steve Alpert, Rice County Atty., Paige M. Snover, Asst. Rice County Atty., Faribault, for appellant.

David Hvistendahl, Hvistendahl & Moresch, P.A., Northfield, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Craig R. Anderson, Sp. Asst. Atty. Gen., St. Paul, for Intervenor State of Minnesota.

Considered and decided by PARKER, P.J., and FORSBERG and NORTON, JJ.

## OPINION

NORTON, Judge.

Appellant Theresa Ann McColley Schmitz ("McColley") seeks review of the trial court's denial of her motion for a new trial in a paternity action. After a jury returned a verdict in favor of respondent Mark Stransky a/k/a Mark Rand ("Stransky"), McColley moved for a new trial alleging as error three evidentiary rulings.

Respondent Stransky filed a notice of review seeking review of orders which require him to reimburse the county for attorney fees expended on his behalf and which refuse to appoint counsel to represent him on this appeal. Stransky now argues that Minn.Stat. § 257.69 is unconstitutional because it violates equal protection by conferring privileges upon custodial parents during paternity actions and that the statute violates the Civil Rights Act of 1964 and the Minnesota Human Rights Act by favoring custodial parents, who are predominately female. Stransky argues that the trial court erred both in requiring him to reimburse Rice County for attorney fees incurred after he was employed and in failing to appoint paid counsel to represent him on this appeal.

Because Stransky challenges the constitutionality of statutes, the State of Minnesota intervenes to defend those statutes. We reverse.

## FACTS

McColley alleges that she and Stransky began a sexual relationship in approximately March of 1981. She lived with Stransky in his home during August and September of 1981, and then moved out. Stransky and McColley saw less of one another after she moved out. In early November of 1981, McColley's physician performed a pregnancy test which was returned negative. In early December 1981, a second test came back positive. A later ultrasound examination placed the date of conception at approximately October 15th. Expert testimony later placed conception between October 20 and November 1, 1981. The full-term child was born July 7, 1982. This paternity action was commenced in May of 1984.

McColley had undergone blood testing in an unrelated paternity action in June of 1982 and she and her new child gave samples for this action in 1984. Blood testing performed on Stransky resulted in a 98.082% likelihood of paternity. McColley had intercourse with two other men during

the probable period of conception, once on October 29, 1981 and once on October 31, 1981. She claims that her sexual relationship with Stransky was continuing at a rate of once or twice a week until October 22, 1981, which she says is the last time that she and Stransky had intercourse. Stransky denies that he ever had a sexual relationship with McColley. Blood tests performed on the other two men exclude both as potential fathers. McColley insists that these three men were the only men with whom she had sexual intercourse during the likely conception time.

At the trial, the main issue for the jury was whether to believe McColley and the blood test or Stransky. McColley sought to introduce Exhibit 9, the child's baby book, in which she had recorded visits and gifts to the child from Stransky's mother and sister. She also sought to introduce Exhibit 10, a photograph of the new baby sleeping under a crocheted afghan presented by Stransky's mother. The trial court excluded Exhibits 9 and 10 on the grounds that they were not relevant. McColley challenges the exclusion.

In support of her allegation that she had been involved in a sexual relationship with Stransky, McColley testified that she had seen a tattoo on his abdomen below the belt line. Stransky made an offer of proof, to pull down his pants, before the jury. The jury was then removed and Stransky, his attorney, McColley's attorney and the judge retired to chambers. Upon their return, the parties stipulated that Stransky did not presently have a tattoo in that location. McColley challenges the offer of proof as an admission of demonstrative evidence which does not tend to support conditions existing at the time relevant to the proceeding.

McColley sought to impeach Stransky's testimony through evidence of two convictions, one for aggravated robbery and theft in 1979 and another for burglary in 1982. Stransky was incarcerated after each conviction. The trial court excluded this evidence as prejudicial and stale; McColley challenges that ruling.

This action was brought by the Rice County Attorney's office on McColley's behalf. Stransky was unemployed when the action commenced. Because he was indigent, a court-appointed and paid attorney represented him. Stransky later became employed and the trial court determined that from September 1, 1986 he was responsible to reimburse the county for the attorney fees it incurred on his behalf. Stransky was also ordered to pay temporary child support in the amount of $115 per month, pending resolution. Those funds were held in escrow by the County. When the jury returned a verdict in favor of Stransky, the court ordered the escrowed support refunded, minus the amount owed to reimburse attorney fees and costs. Stransky argues that it is unconstitutional for McColley to receive free legal representation while he is required to pay for his advocate.

## ISSUES

1. Did the trial court err in refusing to admit Exhibits 9 and 10?

2. Did the trial court err in permitting the offer of proof to be made before the jury?

3. Did the trial court err in refusing to permit evidence of prior convictions for the purpose of impeachment?

4. Does Minn.Stat. § 257.69 unconstitutionally deny noncustodial parents equal protection of laws?

5. Does Minn.Stat. § 257.69 violate Minn.Stat. § 363.03, subd. 4 and the Civil Rights Act of 1964?

6. Did the trial court err in requiring Stransky to reimburse the county his attorney fees?

7. Did the trial court err in not appointing counsel to represent Stransky on appeal?

## ANALYSIS

### I.

McColley challenges the trial court's refusal to admit Exhibits 9 and 10. The trial court's ruling on evidentiary mat-

ters must be sustained in the absence of a clear abuse of discretion. *State v. Brouillette*, 286 N.W.2d 702, 707 (Minn.1979). The trial court excluded Exhibits 9 and 10 on the grounds that gifts from Stransky's mother would not be probative of whether Stransky is the father of the child. The trial court went on to state that even if the evidence were probative, it was too prejudicial and would be excluded under Minn.R. Evid. 403.

The trial court reasoned that the evidence was irrelevant because it could tend to prove only what Stransky's mother believed or wished and could not tend to prove whether her son was in fact the father. The trial court was well within its discretion in excluding this evidence.

## II.

Stransky made an offer of proof that he did not have a tattoo which McColley had described and alleged he had. Her allegation was apparently intended to corroborate her assertion that she had been intimate with Stransky. The offer was made in response to McColley's assertion. McColley argues that the trial court erred in denying her motion for a new trial which was based upon the offer of proof having been made in front of the jury.

■ Offers of proof are to be made outside the hearing of the jury. Minn.R. Evid. 103(c). However, McColley testified that she had seen a particular tattoo on Stransky in 1981. Stransky testified that he did not have such a tattoo, that he had never had such a tattoo and that he had never had a tattoo removed. The record discloses that as soon as Stransky's attorney offered to have Stransky remove his pants, McColley's attorney objected. The jury was removed; the parties retired to chambers, Stransky was examined, and the parties returned to stipulate before the jury that Stransky did not presently have a tattoo. McColley objects to the offer of proof (that Stransky would pull down his pants in court) on the basis that it is inadmissible to show whether he had a tattoo in 1981. Because McColley first alleged the tattoo had existed, and then stipulated that

no tattoo presently existed, the trial court did not abuse its discretion in making this evidentiary ruling.

## III.

■ McColley sought to impeach Stransky's testimony by introducing evidence of Stransky's prior criminal convictions. As he did in the trial court, Stransky attempts to minimize the importance of credibility in this case by instead criticizing the validity of the blood tests which show he is very probably the father. Although no transcript of the video deposition was provided, the expert through whom those tests were introduced, Dr. Polesky, gave uncontradicted testimony indicating that the blood tests were not damaged or invalid in any way. Stransky's allegations that the blood was damaged in transit, or that McColley's sample was corrupted with genetic material from her unborn child flatly contradict the whole of the expert testimony in the record.

Dr. Polesky explained that the blood samples are placed in test tubes containing preservatives and are inspected before testing. He testified that no damage to these particular samples was observed. He also testified that a child younger than six months may carry some of its mother's genetic markers; not that a pregnant mother's blood contains markers from her unborn child. In mischaracterizing the evidence, Stransky seeks to avoid that the crux of this case is in the question of his credibility. Because the blood tests were *not* invalid, the central issue in this case is not simply paternity; the focal point becomes the credibility of the witness who denies it.

■ McColley sought to introduce evidence of two prior crimes: Stransky pleaded guilty to simple robbery on April 25, 1979 and to burglary on October 13, 1982. The trial court granted Stransky's motion in limine, relying on Minn.R.Evid. 609 and *State v. Jones*, 271 N.W.2d 534 (Minn. 1978). The trial court held that the probative value of the evidence did not outweigh its prejudicial effect and that the convictions were stale. With regard to staleness,

the applicable rule provides in pertinent part:

> (b) **Time Limit.** Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction *or* of the release of the witness from the confinement imposed for that conviction, *whichever is the later date, unless* the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. * * *

Minn.R.Evid. 609 (emphasis added).

The summons and complaint in this action were served in May of 1984, and trial began on April 18, 1989. Stransky's first conviction was obtained on April 25, 1979 and Stransky was sentenced to one year in jail. The evidence does not disclose the actual release date. The second conviction on October 13, 1982 resulted in a sentence of eighteen months, with credit for time served. Again, the record does not reveal his actual release date. Because the rule counts time from the date of conviction or the date of release, whichever is the *later* date, the trial court erred in counting instead from the date of the convictions, which was the earlier date. The convictions both, therefore, are admissible under Minn.R.Evid. 609(b).

■ The error is compounded by the trial court's analysis of the *Jones* factors. They are:

> (1) the impeachment value of the prior crime, (2) the date of the conviction and the defendant's subsequent history, (3) the similarity of the past crime with the charged crime (the greater the similarity, the greater the reason for not permitting use of the prior crime to impeach), (4) the importance of defendant's testimony, and (5) the centrality of the credibility issue.

*State v. Jones*, 271 N.W.2d at 538. In *Jones*, a criminal case, the supreme court noted that the rules of evidence were not in effect at the time of Jones' trial. In the civil case here, the rules of evidence apply and require admission of the impeachment

evidence. The applicable rule provides in pertinent part:

> (a) **General Rule.** For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime *shall* be admitted if * * * the crime (1) was punishable by * * * imprisonment in excess of one year * * * *and* the court determines that the probative value * * * outweighs its prejudicial effect, *or* (2) involved dishonesty or false statement, regardless of the punishment.

Minn.R.Evid. 609 (emphasis added). This rule contains a bright line test which requires admission if the crimes involved dishonesty, without regard to the weighing test of prejudice against probative value contained in part (a)(1).

Although the trial court erred in applying the *Jones* factors to weigh prejudice against probity, it found correctly that the convictions were for crimes of dishonesty. *See State v. Stanifer*, 382 N.W.2d 213, 218 (Minn.Ct.App.1986) (robbery is a crime of dishonesty under rule 609(a)). The trial court erred in determining that although Stransky's crimes involved dishonesty, the prejudicial effect outweighed the probative value of admitting this evidence. Because the rule *requires* admission of prior crimes evidence if the crime involves *dishonesty*, the trial court abused its discretion. The convictions are admissible to impeach Stransky's credibility without regard to any prejudicial effect. Minn.R.Evid. 609(a)(2). The crimes were not stale. Minn.R.Evid. 609(b). Therefore, the trial court's remaining analysis is unnecessary and erroneous.

Stransky now argues that a recent *proposed* amendment to Minn.R.Evid. 609 demonstrates that his convictions should be inadmissible against him. He is mistaken. Prior crimes evidence permits the jury to see the "whole person." *State v. Heidelberger*, 353 N.W.2d 582, 589 (Minn.Ct.App. 1984), *pet. for rev. denied* (Minn. Sept. 12, 1984) (citing *Brouillette*, 286 N.W.2d at 707). Because the testimony of the two key witnesses was diametrically opposed, their credibility was critical when the jury was asked to choose. McColley was enti-

tled to have the jury informed about the background of the person whose testimony it was asked to believe. The exclusion of this evidence on the crucial question of Stransky's credibility is an error neither insignificant nor harmless. For this reason, we disagree with the dissent.

## IV.

Stransky questions the constitutionality of Minn.Stat. § 257.69 (1988), which permits governmental legal representation of a custodial parent in paternity proceedings. He contends this statute irrationally favors custodial parents and denies equal protection to others.

■■■ Statutes benefit from a presumption of constitutionality. Minn.Stat. § 645.17(3) (1988). Stransky must demonstrate compelling evidence in order to rebut this presumption. Equal protection requires that persons similarly situated be treated alike. *City of Cleburn v. Cleburn Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3253, 87 L.Ed.2d 313 (1985). Different treatment passes constitutional muster where the distinction in question is rationally based upon a legitimate governmental purpose. *See Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970). The criteria against which the statute in question must be measured are whether 1) the classification uniformly applies to those who are similarly situated, 2) the distinctions are genuine and provide a reasonable basis to justify different legislation, and 3) the classification is relevant to the purpose of the law. *Schwartz v. Talmo*, 295 Minn. 356, 362, 205 N.W.2d 318, 322 (1973), *appeal dismissed* 414 U.S. 803, 94 S.Ct. 130, 38 L.Ed.2d 39 (1974).

■■■ The purpose of a paternity proceeding under Minn.Stat. §§ 257.51–.74 is to establish parentage and provide support for the child. Because the custodial parent has already acknowledged parenthood and is providing support, the distinction between custodial parents and others is genuine and provides a reasonable basis to justify different treatment. This distinction between acknowledged parents who are pro-

viding support and alleged parents who are not providing support is relevant to the purpose of the law. Stransky argues that all parties to a paternity action are similarly situated and should be entitled to free legal services in the interest of determining parentage and support issues. We do not agree that an alleged father who denies paternity is similarly situated to a custodial parent who is providing support. Stransky's argument that the government is obligated to provide him a legal representative because it has provided one to McColley is meritless. Stransky has failed to demonstrate that the statute unconstitutionally violates his equal protection of laws.

## V.

■■■ Stransky also alleges that Minn. Stat. § 257.69 violates the Minnesota Human Rights Act, specifically Minn.Stat. § 363.03, subd. 4, and the Civil Rights Act of 1964. Stransky's argument appears directed at the fact that many of the custodial parents who may receive benefits are women.

Minn.Stat. § 257.69 benefits custodial parents, regardless of gender. Stransky is ineligible for court-appointed and paid legal representation not because he is male, but because he is not a custodial parent.

## VI.

■■■ Stransky alleges the trial court erred in ordering him to reimburse Rice County for attorney fees incurred by it since September 1, 1986. When this action began in 1984, Stransky had been recently released from prison and was unemployed. Minn.Stat. § 257.69, the constitutionality of which we have just upheld against Stransky's challenge, governs appointment of counsel in paternity actions. The statute states in pertinent part: "The court shall appoint counsel for a party who is unable to pay timely for counsel" in paternity actions. Minn.Stat. § 257.69, subd. (1) (1988). A public defender was appointed at county expense and Stransky was ordered to inform the county when he became employed

**462**

and again had income. In 1986 the court learned that Stransky had become employed and it ordered him to pay attorney fees from September 1, 1986 forward.

Stransky argues that the statute does not require *complete* reimbursement of attorney fees. He asserts that the trial court should have entered specific findings regarding his ability to pay and that if he is not capable of repaying in a reasonable period, such as a year, the fees should be forgiven. The statute states in relevant part that "the court *shall* require a party to pay part of the fees of court-appointed counsel according to the party's ability to pay * * *." Minn.Stat. § 257.69, subd. 2 (emphasis added). There is absolutely no authority for the proposition that if Stransky delays payment, he then should not be required to reimburse the county. Rather, after Stransky became employed, the court found that he was no longer entitled to court-appointed counsel. The trial court did not err in its application of this statute to Stransky.

### VII.

■ Stransky also argues that the trial court erred in failing to appoint counsel to represent him on this appeal. Stransky argues that the court applied the wrong standard in refusing him court-appointed appellate counsel. As noted above, the trial court found that Stransky was "indigent within the meaning of Minn.Stat. § 257.69, subd. 1." The statute does not contain the word 'indigent.' The correct language, as discussed above, is "unable to pay timely." However, the case upon which Stransky relies, *Hepfel v. Bashaw,* 279 N.W.2d 342 (Minn.1979), was decided before the present statute was enacted. Similarly, Stransky relies upon the model Uniform Parentage Act, although the Minnesota Legislature adopted a *revised* version in 1980.

*Hepfel* and the UPA are unnecessary to resolution of this problem. Minn.Stat. § 257.69 does not refer specifically to appellate counsel. This statute orders court-appointed counsel for those 'unable to pay timely' which was Stransky's situation when the action began. When Stransky

became employed, the trial court ordered him to take responsibility for his legal fees. The trial court did not err in refusing to appoint counsel for Stransky in this appeal.

### DECISION

The trial court abused its discretion in refusing to permit prior crimes evidence for impeachment of Stransky's testimony. McColley is entitled to a new trial. The constitutionality of the statute in question is affirmed. Stransky is not entitled to court-appointed counsel and must reimburse the county for the expenses it has incurred on his behalf.

Reversed.

FORSBERG, Judge (dissenting):

I respectfully dissent. I would not reverse solely on the basis that the judge erred in not admitting prior convictions into evidence. Such evidence is hardly crucial to the issue of paternity and should be considered harmless error.