CITY OF WINONA, et al., Respondents,

v.

POLICEMAN'S RELIEF ASSOCIATION OF the CITY OF WINONA, Appellant.

WINONA POLICE RELIEF ASSOCIATION, Appellant,

v.

PUBLIC EMPLOYEE'S RETIREMENT ASSOCIATION, et al., Respondents,

and

Robert M. Carstenbrock, Respondent.

Nos. 48790, 48854.

Supreme Court of Minnesota.

May 18, 1979.

Moriarty, Mollerus & Janzen and Louis J. Moriarty, Minneapolis, for appellants.

George M. Robertson, Jr., City Atty., Winona, for City of Winona and Carstenbrock.

Warren Spannaus, Atty. Gen., and Merwin W. Peterson, Asst. Atty. Gen., St. Paul, for Public Employee's Retirement Assn., et al.

Heard before YETKA, SCOTT, and WAHL, JJ., and considered and decided by the court en banc.

## OPINION

PER CURIAM.

These appeals, involving two consolidated actions, are taken from orders of the Third Judicial District Court upholding the constitutionality of L.1977, c. 429, § 62, which allows Robert M. Carstenbrock to become a member of the Public Employees Retirement Association (PERA) and requires the Winona Police Relief Association (WPRA) to make certain payments to PERA and Carstenbrock. We affirm.

In November 1972, Carstenbrock was hired as the police chief for the City of Winona (Winona). Prior to that time, Carstenbrock served for six years as the chief of police for Inver Grove Heights, and before that he was employed for twelve years, in various capacities, by the Richfield Police Department. During these 18 years prior to his employment by Winona, Carstenbrock was a member of the PERA Police and Fire Fund. Upon his employment by Winona, a city of the second class, Carstenbrock became a member of WPRA, Minn.St. 423.801, subd.2, and lost his membership status in PERA. Minn.St. 353.64, subd. 1.

Under the PERA Police and Fire Fund, a member is entitled to a retirement annuity if he is separated from public service, has reached the age of 55, and has received credit for at least 10 years of allowable service. Minn.St. 353.651, subd. 1. The amount of the annuity is computed by multiplying the average of the highest salary earned for five successive years by 2½ percent per year for the first 20 years of allowable service and 2 percent per year of allowable service thereafter. Minn.St. 353.-651, subds. 2 and 3. The PERA Police and Fire Fund is financed, in part, by employee contributions equal to 8 percent of the salary of the member and by employer contributions equal to 12 percent of the total salary of every member. Minn.St. 353.65.

Under the WPRA Program, a police officer, in order to receive a pension, must be a member of the association for 20 years. Minn.St. 423.809, subd. 1. The amount of the pension is based upon the salary of a first-grade patrolman. See, id., and Minn.St. 423.801, subd. 3. If a member is separated from service and is not eligible for pension benefits, he may receive 75 percent of the amount he paid in, without interest. Minn.St. 423.809, subd. 2.

By a resolution dated January 21, 1974, the Winona City Council requested the legislature to pass legislation allowing Carstenbrock, at his option, to become a member of PERA retroactive to the date of his employment by Winona. On January 10, 1977, the Winona City Council passed a similar resolution, again requesting the legislature to enact a law to allow Carstenbrock to become a member of PERA, as of the date his employment by Winona commenced. During the 1977 Session, the legislature passed Section 62 of Chapter 429, which reads as follows:

"WINONA POLICE CHIEF; PENSION COVERAGE. Subdivision 1. Notwithstanding Minnesota Statutes, Section 353.64, Subdivision 1 or any other law to the contrary, the person employed by the city of Winona on the effective date of this section as chief of police shall be a member of the public employees police and fire fund established by sections 353.-63 to 353.68 and not of the local policemen's relief association established pursuant to sections 423.801 to 423.815. An amount equal to the employer and employee contributions which would have been required pursuant to section 353.65, had the person been a member of the public employees police and fire fund from the commencement of his employment with the police department of the city of Winona, plus interest at the rate of six percent per annum compounded annually from the year the payment would otherwise have been made to the year the payment is made, shall be paid to the public employees police and fire fund, which shall credit the chief of police with service as a member for this period upon the receipt of the payments required under this section. An amount equal to the employer contributions plus interest as herein specified shall be transferred from the Winona policemen's relief association to the public employees police and fire fund. An amount equal to the employee contributions plus interest as herein specified shall be paid by the chief of police to the public employees police and fire fund. The chief of police shall be entitled to receive, upon making written application, a refund of his accumulated contributions to the Winona policemen's relief association plus interest at the rate actually received by the relief association as determined by the board of trustees of the relief association.

"Subd. 2. This section is effective upon approval by the Winona city council and upon compliance with Minnesota Statutes, Section 645.021." [1]

By resolution dated July 5, 1977, the Winona City Council approved Section 62, and as required by Minn.St. 645.021 the Winona City Clerk made his certification.

After demand by PERA and Carstenbrock, WPRA refused to make the payments required by the statute. On October 6, 1977, Winona petitioned the district court for a writ of mandamus requiring WPRA to comply with Section 62 (*Winona, et al., v. WPRA*). WPRA, on October 7, 1977, commenced a declaratory judgment action requesting the district court to declare Section 62 unconstitutional (*WPRA v. PERA, et al.*). On October 28, 1977, a consolidated hearing of the two cases was held. By order dated January 18, 1978, the district court directed that the writ of mandamus issue in the case of *Winona, et al., v. WPRA*. Additionally, the district court treated WPRA's request for a declaratory judgment as a motion for summary judgment, and determined that Section 62 was constitutional.

Thereafter, WPRA moved the district court for amended findings of fact, conclusions of law, and order for judgment, or, in the alternative, for a rehearing or new trial in each case. On February 28, the district court issued an order in the case of *Winona, et al., v. WPRA*, re-directing that the writ of mandamus issue. In an order dated March 31, 1978, the court denied all WPRA's motions made in the case of *WPRA v. PERA, et al.* The instant appeals are taken from these orders of the district court.

The following relevant issues are presented:

(1) Is Section 62 inconsistent with Minn. Const. art. 12?

(2) Does Section 62 violate the Equal Protection Clause?

■ 1. WPRA argues that Section 62 is special legislation within the meaning of Minn.Const. art. 12, § 1, and thus is invalid. We need not decide this issue, however, because even assuming, *arguendo,* that Section 62 is special legislation, it is nevertheless constitutional by operation of Minn. Const. art. 12, § 2. That constitutional provision reads, in relevant part, as follows:

"Special laws; local government. Every law which upon its effective date applies to a single local government unit or to a group of such units in a single county or a number of contiguous counties is a special law and shall name the unit or, in the latter case, the counties to which it applies. The legislature may enact *special laws relating to local government units*, but a special law, unless otherwise provided by general law, shall become effective only after its *approval by the affected unit* expressed through the voters or the governing body and by such majority as the legislature may direct." [2] (Emphasis added.)

Section 62 relates to Winona, a local government unit. Also, Winona approved of the legislation, as the law required. WPRA, however, argues that the above constitutional provision is inapplicable because Section 62 does not affect Winona, but rather directs WPRA to do certain acts. We do not agree; Section 62 does "affect" Winona. As a result of the law, Winona is now required to contribute an amount equal to 12 percent of Carstenbrock's salary into PERA. Thus, Winona will be financially affected by Section 62. Additionally, Winona is "affected" because without Section 62 it would not have been able to hire the best qualified individual as its police chief. A merit board was appointed by the city council to search for the best qualified chief and ultimately recommended Carstenbrock. The record indicates that Carstenbrock

---

1. It should be noted that statutes similar to Section 62 have been enacted by the legislature. See, e. g., L.1976, c. 247 (Albert Lea police chief on date act becomes effective is placed in PERA).

2. There is no pertinent case law which relates to this "escape clause" contained in Article 12, § 2, of the Minnesota Constitution.

would not have accepted the position unless Winona agreed to secure legislation so that he could remain a member of PERA. And finally, Winona and WPRA are so interrelated[3] that, in combination, they act as one governmental unit and therefore approval by Winona of Section 62 will validate the statute. Indeed, WPRA cannot exist or operate effectively without the city of Winona. Minn.St. 423.803 provides that "[t]he mayor, chief of police, and treasurer of the city shall be ex officio members" of the board. In addition, Winona must ratify all bylaws or articles of incorporation amendments affecting benefits paid to WPRA members before such provisions can become effective. Minn.St. 69.77, subd. 2a.

Based on the foregoing, we find that Section 62 is consistent with Article 12 of the Minnesota Constitution and therefore reject WPRA's contention.

 2. WPRA further contends that Section 62 denies equal protection of the laws to members of WPRA because Carstenbrock is able to obtain a 100-percent refund of his payments to the local fund, plus interest, while the members of WPRA would only be entitled to 75 percent of their contributions, without interest, if they were separated from the fund without being entitled to a pension. Minn.St. 423.809, subd. 2. This contention is without merit.

As summarized by this court in *State v. Knox*, 311 Minn. 314, 322, 250 N.W.2d 147, 153 (1976), the Equal Protection Clause, U.S.Const. Amend. XIV, § 1, requires:

> " * * * that a legislative classification apply uniformly to all persons similarly situated, and that the distinctions which separate those who are included in a classification from those who are not must not be arbitrary or fanciful, but rather must be natural and reasonable. Finally, the classification must be germane to a lawful objective." (Citations omitted.)

See, also, *Schwartz v. Talmo*, 295 Minn. 356, 205 N.W.2d 318, appeal dismissed 414 U.S. 803, 94 S.Ct. 130, 38 L.Ed.2d 39 (1973).

In this case, Section 62 places Carstenbrock, the Winona police chief, in his own class.[4] This classification is consistent with equal protection standards. The statutory class furthers a government interest in providing for uniform pension systems and preventing police personnel from being in more than one pension program. See, *Columbia Heights Police Relief Ass'n v. City of Columbia Heights*, 305 Minn. 399, 233 N.W.2d 760 (1975). The classification also allows Winona to hire the best-qualified individual for the job. Further, since Carstenbrock was the most qualified person for the police chief position when selected in 1972, there exists a substantial distinction between him and other WPRA members. Accordingly, Section 62 does not deny equal protection of the laws to other members of WPRA.

Affirmed.

---

3. See, *Columbia Heights Police Relief Ass'n v. City of Columbia Heights*, 305 Minn. 399, 233 N.W.2d 760 (1975).

4. Even though a class is made up of just one, it nevertheless can be constitutional. See, *Visina v. Freeman*, 252 Minn. 177, 89 N.W.2d 635 (1958).