Mary KRAMER, Spouse of Gordon Kramer, Jr., Deceased, Respondent,

v.

STATE of Minnesota, PEACE OFFICERS BENEFIT FUND, Relator,

and

City of St. Paul, Respondent.

No. CX–85–946.

Supreme Court of Minnesota.

Jan. 31, 1986.

Jacob E. Forsman, Workers' Compensation Div., St. Paul, for Kramer.

Kenneth E. McCoy, St. Paul, for Kramer.

Thomas Weyandt, Asst. City Atty., St. Paul, for St. Paul.

## OPINION

SIMONETT, Justice.

We reverse the decision of the Workers' Compensation Court of Appeals awarding petitioner benefits for her husband's death under the Peace Officers Benefit Fund.

Minn. Stat. ch. 352E (1980) establishes a peace officers benefit fund which pays $50,000 to the spouse and dependents of a "peace officer" who is "killed in the line of duty." This appeal raises issues of the procedure to be followed in presenting a claim against the fund and the meaning of the phrase "killed in the line of duty."

On December 9, 1975, Gordon Kramer, Jr., a detective with the St. Paul Police Department, slipped while descending steps at the St. Paul Safety Building. He avoided falling by grabbing a railing, but in the process he felt a sharp pain in his upper back, which proved to be a myocardial infarction or "heart attack." Kramer was off work for a period of months, and, because the disability was job related, the City of St. Paul paid Kramer compensation benefits as part of his full salary pursuant to provisions of the city charter. In March 1977 Kramer suffered a second heart attack while walking a half block to work through heavy wet snow. On the theory that this second heart attack was related to the first heart attack, Kramer obtained further compensation benefits in a settlement with the City.

On December 1, 1978, at the age of 55 years with 31 years of service, Kramer retired from the police force as a "service pensioner." About a year and a half after his retirement, on June 28, 1980, Kramer was at home doing odd jobs when he died of a third heart attack. His widow was successful in obtaining further workers' compensation benefits in a settlement with the City, again on the theory that the fatal heart attack was related to the first.

In October 1983 petitioner Mary Kramer, decedent's widow, filed a petition with the Workers' Compensation Court of Appeals for benefits from the peace officers benefit fund pursuant to Minn. Stat. ch. 352E. Named as respondents in the petition were the City of St. Paul and State of Minnesota, Peace Officers Benefit Fund (the Benefit Fund). In her petition, Mary Kramer alleged the City had refused to certify that Gordon Kramer was a police officer killed in the line of duty. In their answer to the petition, respondents denied liability and also asserted that the WCCA lacked jurisdiction to entertain the petition. The WCCA referred the matter to a compensation judge for an evidentiary hearing. After receiving the compensation judge's findings, the WCCA ruled that it had jurisdiction; that Kramer's employment as a peace officer was a substantial, contributing cause of his death; that the standard for compensation under the peace officers benefit fund is the same as under Minn. Stat. ch. 176; and, finally, that petitioner was entitled to an award of $50,000. The Benefit Fund seeks review of this decision by certiorari.

Two issues are presented:

(1) Does the Workers' Compensation Court of Appeals have subject matter jurisdiction? and

(2) If so, was Gordon Kramer's death that of a peace officer killed in the line of duty?

I.

Chapter 352E, entitled "Peace Officers Killed in the Line of Duty," was enacted in 1973. Section 352E.02 provides for the creation of a peace officers benefit fund in the state treasury consisting of moneys appropriated thereto.[1] The next section, 352E.03 (1980), reads: "Eligibility to receive benefits as herein provided shall be determined by the workers' compensation court of appeals in the manner provided by chapter 176." The following section, 352E.04 (1980), provides:

> Upon certification to the governor by the administrator * * *[2] that a peace officer employed by that state or governmental subdivision within this state has been killed in the line of duty, leaving a spouse or one or more eligible dependents, the commissioner of finance shall, subject to the approval of the workers' compensation court of appeals, pay $50,000 * * *.

■ This is a curious statutory scheme and raises the threshold issue whether the Workers' Compensation Court of Appeals has subject matter jurisdiction to hear Mary Kramer's petition. This issue was raised by the Benefit Fund both before the WCCA and in its statement of the case to this court.[3]

1. In 1984 the legislature amended this section by adding: "The administrator of the fund is the commissioner of labor and industry, who shall follow the procedures specified in section 176.-541, subdivisions 2, 3, and 4." 1984 Minn.Laws, ch. 654, art. 2, § 125. Claim petitions filed since this amendment would presumably name the commissioner of labor and industry as a respondent.

2. Under the 1980 version of section 352E.04 applicable to this case, certification to the governor is by the administrator of the state or governmental subdivision employing the peace officer—here the Mayor of St. Paul. The section

was amended in 1984 to require certification to be by the administrator of the fund, i.e., the commissioner of labor and industry. 1984 Minn.Laws ch. 654, art. 2, §§ 125, 126. The 1984 amendments also increased the death benefit from $50,000 to $100,000. 1984 Minn.Laws ch. 454, § 1.

3. Although the Benefit Fund raised the jurisdictional issue, it did not brief it before us. Nevertheless, the issue must be addressed because the parties cannot confer subject matter jurisdiction on this court or the WCCA. See, e.g., Hemmesch v. Molitor, 328 N.W.2d 445, 447 (Minn.1983).

The WCCA, relying on one of its earlier decisions,[4] ruled that it had jurisdiction to decide the claim, one judge dissenting. The dissent argues that the determination whether a decedent was a peace officer killed in the line of duty is made by the designated administrative official, and that the administrator's certification to the governor is the jurisdictional prerequisite to WCCA approval of a claim. The dissent argues that the WCCA only determines eligibility in the sense of who are the eligible dependents to receive the award once certification has been made. The WCCA majority, on the other hand, points out that a claimant is entitled to a hearing on her or his petition and that the statute makes no provision for any hearing before the administrator of the fund. The WCCA majority thought certification was only a nonjurisdictional procedural matter.

Presumably a claimant denied certification could have a hearing in a mandamus action in district court. This would mean two separate proceedings on any disputed claim, one proceeding in district court to decide liability and a second proceeding before the WCCA to decide dependents' eligibility and, as required by section 352E.045, to award fees to claimant's attorney. We do not think, however, that the legislature intended a bifurcated, two-track procedure for processing chapter 352E claims, nor do we think that a two-track procedure serves the interests of judicial economy.

◼◼◼ We hold that the WCCA has subject matter jurisdiction to decide the liability of the benefit fund for any claim. Certification, in other words, is simply a procedure whereby the administrator admits or denies that the decedent was a peace officer killed in the line of duty. As we construe the statute, a petitioner files a petition with the WCCA alleging that the administrator has either granted or refused certification. If there has been a certification, there is simply one less fact issue for the WCCA to decide. If certification has been refused, the WCCA decides, in addition to dependents' eligibility and attorney fees, whether a peace officer has been killed in the line of duty.[5]

## II.

1. It seems clear to us that a claim against the peace officers benefit fund can be paid only if the decedent was a peace officer killed in the line of duty. Minn. Stat. § 352E.04 (1980) so states, and we so hold.[6]

◼◼◼ The WCCA applied an incorrect liability standard. Relying on the phrase in section 352E.03 that the WCCA is to determine eligibility to receive benefits "in the manner provided by chapter 176," the WCCA ruled that the workers' compensation standard for liability applied, namely, whether the peace officer's death arose out of and in the course of employment. The WCCA reasoned that "killed in the line of duty" was only a test for certification, not for claims liability, but this is a distinction without a difference. If the legislature

---

4. *Sandbeck v. State of Minnesota and City of St. Paul,* No. 472–20–5981 (WCCA filed April 1, 1983). In *Sandbeck,* the WCCA, Judge Gard dissenting, held that it had subject matter jurisdiction and, on facts much like this case, awarded benefits to a police officer's survivors. *Sandbeck* was not appealed.

5. It can be argued that the WCCA is not designed to be a factfinding body and consequently the legislature could not have intended it to decide chapter 352E claims. Indeed, Minn.Stat. § 175A.01, subd. 2 (1984), provides the WCCA "shall exercise appellate jurisdiction" under chapter 352E. Nevertheless, in chapter 352E the legislature has charged the WCCA with "approval" of a petitioner's claim, and this implicit-

ly requires the WCCA to do such factfinding as may be required for approval or disapproval. As was done here, the WCCA can refer the matter to a compensation judge for any preliminary factfinding.

6. This is also clear from the title of the act creating the fund. Chapter 352E was enacted by 1973 Minn.Laws ch. 248, entitled: "An act relating to peace officers; *providing benefits to survivors of peace officers killed in the line of duty*; establishing a peace officers' benefit fund * * *." (Emphasis added.) The title of an act may be considered in ascertaining legislative intent. *State v. Northwestern States Portland Cement Co.,* 258 Minn. 162, 166, 103 N.W.2d 225, 227 (1960).

had intended an award under the peace officers benefit fund to be nothing more than additional workers' compensation benefits, there would have been little need to set up a separate chapter for peace officer death benefits completely outside of chapter 176. We conclude that "killed in the line of duty" is the standard to be used under chapter 352E. "Killed in the line of duty," while it includes the concept of "arising out of and in the course of employment," means something more.

2. In *Dependents of Ondler v. Peace Officers Benefit Fund*, 289 N.W.2d 486 (Minn.1980), we held the dependents of a firefighter who died of a heart attack while fighting a fire were entitled to the benefit award under chapter 352E. In that case, the state conceded the decedent was killed in the line of duty and we did not have to construe the phrase. We held only that denying benefits to peace officers dying from heart attacks, as the statute then read, was a denial of equal protection and unconstitutional.[7]

The Benefit Fund argues that "killed in the line of duty" is a two-part test. The term "killed," it suggests, means a sudden accidental death, citing *Vernon v. Firemen's Pension Fund of Philadelphia*, 160 Pa.Super. 617, 52 A.2d 199 (1947). The term "in the line of duty" refers, argues the Benefit Fund, to some sole and immediate causal relationship between the fatal accident and the inherent dangers of police work. Petitioner, on the other hand, argues that "line of duty" means no more than being on the job, and the fact that Kramer did not die until 4½ years after his initial job-related heart attack does not

mean the initial heart attack was not a substantial cause of his death. The Benefit Fund counters that it could be said Kramer was killed by his third heart attack or that his death was due to other factors (Kramer was 5′ 11″ tall, weighed 300 pounds, and apparently had hereditary heart problems), and that his death occurred while he was retired on a service pension.

In construing "killed in the line of duty," we must keep in mind the purpose of chapter 352E. The peace officers benefit fund is funded by the state to provide a special lump sum award to spouses and dependent children of peace officers in recognition of the "unusual risks [peace officers] face in their work." *Ondler*, 289 N.W.2d at 489. At least for the purposes of this case, we see no need to separate the terms "killed" and "in the line of duty." Both terms, read together as one phrase in the context of the purpose of chapter 352E, denote, we think, a death occurring under circumstances warranting payment of compensation to survivors beyond that afforded by the Workers' Compensation Act or any pension program. It is a payment made by a grateful public in recognition of a peace officer's supreme sacrifice while performing hazardous work in protection of the public, which kind of work, for peace officers, is in the "line of duty."[8]

With this in mind, we believe that the phrase "killed in the line of duty" is to be understood as death resulting from the performance of those duties peculiar to a peace officer that expose the officer to the hazard of being killed. Gordon Kramer's

---

**7.** In 1981 the legislature amended section 352E.04 to remove the unconstitutional prohibition against coverage for heart attacks, 1981 Minn.Laws ch. 356 § 354, and in 1984 substituted: " 'Killed in the line of duty' does not include deaths from natural causes or deaths that occur during employment for a private employer." 1984 Minn.Laws ch. 654, art. 2, § 126.

**8.** The manner in which the legislature chose to define the term "peace officer" is significant in indicating that the term "killed in the line of duty" was intended to refer to a peace officer's hazardous duties. Thus the term "peace officer"

refers to a police officer employed "to enforce the criminal laws"; or to a sheriff or deputy sheriff or employee of the bureau of criminal apprehension "with power of arrest by warrant"; to a correction officer charged with "the safety, security, discipline and custody of inmates"; and to a firefighter "engaged in the hazards of fire fighting." *See* Minn.Stat. § 352E.01, subd. 2 (1980). In this case the parties agree Gordon Kramer was a peace officer at the time of the first heart attack. The dispute is whether he was killed in the line of duty.

death does not meet this test. Kramer was walking down steps in the St. Paul Safety Building, apparently engaged in the ordinary activity of administrative office routine, when he suffered his first heart attack. He was not then engaged in a duty peculiar to peace officers that exposed him to the hazard of being killed. Kramer was not, therefore, "killed in the line of duty," and his survivors are not entitled to benefits from the peace officers benefit fund.

Reversed.

SCOTT, J., dissents.

SCOTT, Justice (dissenting).

I respectfully dissent. The Workers' Compensation Court of Appeals held that Mary Kramer was entitled to benefits under Minn. Stat. § 352E.03 (1980) because the evidence showed that the decedent's employment as a police officer was a substantial contributing cause of his death. Section 352E.03 provides, "Eligibility to receive benefits * * * shall be determined by the workers' compensation court of appeals in the manner provided by chapter 176." Quoting one of its previous cases, the WCCA reasoned that the benefits under this section are payable in this case because "[b]enefits under chapter 176 are payable if work activity or exposure is a substantial contributing cause of a personal injury or occupational disease, including death, as a result." *Sandbeck v. State of Minnesota and City of St. Paul*, No. 472–20–5981 (Workers' Compensation Court of Appeals, April 22, 1985) at 4.

The majority, however, rejects this reasoning and instead holds that chapter 352E applies only in situations in which a peace officer's death results "from the performance of those duties peculiar to a peace officer that expose the officer to the hazard of being killed." I fear the majority, in attempting to clarify the eligibility standard under the statute, has added to the confusion. Does the test established by the majority mean benefits are available only if a police officer is shot, stabbed, or run down by an assailant? Does it mean the officer's survivors recover if he or she is killed in an automobile accident during a high speed chase, but not in an accident while on routine patrol?

One example reveals the problems created by the majority's position. Assume a police officer responds to an emergency call. In response to that emergency, he or she slips and is killed in a fall. Presumably, under today's holding, the officer's dependents would not be eligible for benefits under chapter 352E because the officer's death did not result "from the performance of those duties peculiar to a peace officer that expose the officer to the hazard of being killed." The risk of slipping is not peculiar to peace officers. The officer, however, would have been considered "killed in the line of duty" as that term is commonly understood.

The majority is attempting to create a distinction in the law which should be made, defined, and clarified by our legislature. Until the legislature determines that more specificity is necessary in defining eligibility for benefits, we are limited to following the standard it has provided us. That standard is that "[e]ligibility to receive benefits * * * shall be determined by the workers' compensation court of appeals in the manner provided by chapter 176." Minn.Stat. § 352E.03 (1984). The WCCA properly followed this legislative mandate using the workers' compensation standard because no other standard was provided by the legislature.

If the legislative intent is to permit recovery in limited circumstances only, it is the duty of the legislature, not the court, to define those circumstances. For example, California has a statute which provides scholarships for minor dependent children of police officers killed in the line of duty. These benefits are available only to children of a police officer "who is killed in the performance of his duty or who dies or is totally disabled as a result of an accident or an injury caused by external violence or physical force, incurred in the performance of his duty." Cal.Labor Code § 4709 (West Supp.1985). The Indiana Legislature, in

enacting a similar statute, defines "dies in the line of duty" as "death that occurs as a direct result of personal injury or illness resulting from the member's action in his capacity as a police officer in responding to an offense or a reported offense." Ind. Code Ann. § 36–8–6–10.1(b) (Burns Supp. 1985). Finally, consider the line-of-duty death benefits provided by the Delaware Legislature. The relevant statute · provides, in part:

(2) "Death in the line of duty" shall mean any death of a covered person under this chapter, arising out of and in the course of that person's assigned duty, including all normal and special assignments as ordered by his or her superiors or assignments undertaken while acting as a law-enforcement officer under rules, directions or regulations promulgated by the appropriate employing authority, within or outside of normal duty hours; provided, however, that death of a covered person occurring while that person is on active duty shall create a rebuttable presumption that such death was a death in the line of duty and that the burden of proof shall be on the employer to demonstrate by a preponderance of the evidence that such death was not a death in the line of duty.

(2a) "Death in the line of duty" with respect to enrolled firemen and ladies auxiliary members as referred to in paragraph a. of subdivision (1) of this section shall include in addition to other provisions of this section any death occurring while performing assigned duties, or while traveling to or returning from a fire alarm, rescue operation or any other emergency volunteer fire company action; provided, however, that the phrases "traveling to" and "returning from" shall include the time encompassed by the fireman's or ladies auxiliary members' entrance into their personal vehicle or company emergency vehicle in response to the alarm or emergency call until their first disembarkation from their personal vehicle at their home, place of employment or other location.

Del.Code Ann. tit. 18, § 6601 (1974 & Supp. 1984).

The standard provided by the Minnesota Legislature is that "[e]ligibility to receive benefits * * * shall be determined by the workers' compensation court of appeals in the manner provided by chapter 176." Without the benefit of detailed legislation to the contrary, the only reasonable conclusion is to hold that the WCCA applied the correct standard by using the same rules it uses in workers' compensation cases and to leave further change in the hands of the legislature. Accordingly, I would affirm the decision of the Workers' Compensation Court of Appeals.